**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
468 North Camden Drive
Beverly Hills, CA 90210
Telephone:   (818) 532-6499
E-mail: jpafiti@pomlaw.com
- *additional counsel on signature page* -

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MEERAIN ALI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>INTEL CORPORATION, BRIAN M. KRZANICH and ROBERT H. SWAN,<br><br>Defendants | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Meerain Ali ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Intel Corporation ("Intel" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired the securities of Intel between July 27, 2017 and January 4, 2018, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

2. Intel Corporation designs, manufactures, and sells computer components and related products. The Company's major products include microprocessors, chipsets, embedded processors and microcontrollers, flash memory, graphic, network and communication, systems management software, conferencing, and digital imaging products.

3. Founded in 1968, the Company is headquartered in Santa Clara, California, and its stock trades on the NASDAQ Global Select Market ("NASDAQ") under the ticker symbol "INTC."

4. Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) a fundamental security flaw in Intel's processor chips renders them susceptible to hacking; (ii) software updates to fix the problems in Intel's processor chips could cause Intel chips to operate 5-30 percent more slowly; and (iii) as a result, Intel's public statements were materially false and misleading at all relevant times.

5. On January 2, 2018, post-market, news outlets reported that a significant design flaw in Intel's processor chips could allow malicious software to read protected areas of a device's kernel memory—*i.e.*, memory dedicated to the most essential core components of an operating system and their interactions with system hardware—potentially exposing protected information, such as passwords. The online publication *The Register* reported that the operating system updates necessary to

address the vulnerability would likely result in "a ballpark figure of five to 30 percent slow down, depending on the task and the processor model," for Intel-based computing devices.

6. On January 3, 2018, media outlets further reported that Google Project Zero's security team had discovered serious security flaws affecting computer processors built by Intel, Advanced Micro Devices, Inc. ("AMD") and other chipmakers. In a blog post, the Project Zero team stated that security flaws—dubbed "Meltdown" and "Spectre"—allows third parties to gather passwords and other sensitive data from a system's memory, stating in relevant part:

> We have discovered that CPU data cache timing can be abused to efficiently leak information out of mis-speculated execution, leading to (at worst) arbitrary virtual memory read vulnerabilities across local security boundaries in various contexts.
>
> Variants of this issue are known to affect many modern processors, including certain processors by Intel, AMD and ARM. For a few Intel and AMD CPU models, we have exploits that work against real software. We reported this issue to Intel, AMD and ARM on 2017-06-01.

7. On that same day, Intel published an article on its website entitled "Intel Responds to Security Research Findings," confirming that its chips contain a feature that makes them vulnerable to hacking, stating in pertinent part:

**Intel Responds to Security Research Findings**

> Intel and other technology companies have been made aware of new security research describing software analysis methods that, when used for malicious purposes, have the potential to improperly gather sensitive data from computing devices that are operating as designed.

8. Following these disclosures, Intel's share price fell $1.59, or over 3.5%, to close at $45.26 per share on January 3, 2018.

9. On January 4, 2018, several news outlets reported that Intel's CEO, Defendant Krzanich, sold off $24 million worth of Intel stock and options in late November, after Intel was informed of vulnerabilities in its semiconductors, but before it was publicly disclosed. Defendant Krzanich sold roughly half his stock and options months after he learned about critical flaws in billions of Intel's

microchips, but before it was publicly disclosed, and now holds only the minimum number of shares he is required to own.

10. Following this news, Intel's share price fell $0.83, or 1.83%, to close at $44.43 per share on January 4, 2018, damaging investors.

11. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

**JURISDICTION AND VENUE**

12. The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

13. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

14. Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b). Intel's principal executive offices are located within this Judicial District.

15. In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

**PARTIES**

16. Plaintiff, as set forth in the accompanying Certification, purchased Intel securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

4

17. Defendant Intel is incorporated in Delaware, and the Company's principal executive offices are located at 2200 Mission College Boulevard, Santa Clara, California 95054. Intel's common stock trades on the NASDAQ under the ticker symbol "INTC."

18. Defendant Brian M. Krzanich ("Krzanich") has served at all relevant times as the Company's Chief Executive Officer ("CEO") and Director.

19. Defendant Robert H. Swan ("Swan") has served at all relevant times as the Company's Chief Financial Officer ("CFO") and Executive Vice President.

20. The Defendants referenced above in ¶¶ 18-19 are sometimes collectively referred to herein as the "Individual Defendants."

21. The Individual Defendants possessed the power and authority to control the contents of Intel's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of the Company's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with the Company, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

22. Intel Corporation designs, manufactures, and sells computer components and related products. The Company major products include microprocessors, chipsets, embedded processors and microcontrollers, flash memory, graphic, network and communication, systems management software, conferencing, and digital imaging products.

5

**Materially False and Misleading Statements Issued During the Class Period**

23. The Class Period begins on July 27, 2017, when Intel filed a Quarterly Report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended July 1, 2017 (the "Q2 2017 10-Q"). The Q2 2017 10-Q stated that the Company's disclosure controls and procedures were effective as of July 1, 2017, and that "[t]here were no changes to our internal control over financial reporting (as defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act) that occurred during the quarter ended July 1, 2017 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting."

24. The Q2 2017 10-Q discussed Intel's microprocessor and chipset, stating in pertinent part:

> We offer platforms that incorporate various components and technologies, including a microprocessor and chipset, a stand-alone System-on-Chip, or a multichip package.

25. The Q2 2017 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by the Individual Defendants, stating that the financial information contained in the Q2 2017 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

26. On October 26, 2017, when Intel filed a Quarterly Report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended September 30, 2017 (the "Q3 2017 10-Q"). The Q3 2017 10-Q stated that the Company's disclosure controls and procedures were effective as of September 30, 2017, and that "[t]here were no changes to our internal control over financial reporting (as defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act) that occurred during the quarter ended September 30, 2017 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting."

27. The Q3 2017 10-Q discussed Intel's microprocessor and chipset, stating in pertinent part:

> We offer platforms that incorporate various components and technologies, including a microprocessor and chipset, a stand-alone System-on-Chip, or a multichip package.

28. The Q3 2017 10-Q contained signed certifications pursuant to SOX by the Individual Defendants, stating that the financial information contained in the Q3 2017 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

29. The statements referenced in ¶¶ 23-28 above were materially false and/or misleading because they misrepresented and/or failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) a fundamental security flaw in Intel's processor chips renders them susceptible to hacking; (ii) software updates to fix the problems in Intel's processor chips could cause Intel chips to operate 5-30 percent more slowly; and (iii) as a result, Intel's public statements were materially false and misleading at all relevant times.

### The Truth Begins to Emerge

30. On January 2, 2018, post-market, news outlets reported that a significant design flaw in Intel's processor chips could allow malicious software to read protected areas of a device's kernel memory, potentially exposing protected information, such as passwords. The online publication *The Register* published an article entitled "Kernel-memory-leaking Intel processor design flaw forces Linux, Windows redesign," reporting that the operating system updates necessary to address the vulnerability would likely result in "a ballpark figure of five to 30 percent slow down, depending on the task and the processor model," for Intel-based computing devices. The article further stated in part:

**Kernel-memory-leaking Intel processor design flaw forces Linux, Windows redesign**

**Speed hits loom, other OSes need fixes**

By John Leyden and Chris Williams 2 Jan 2018 at 19:29

**Final update** A fundamental design flaw in Intel's processor chips has forced a significant redesign of the Linux and Windows kernels to defang the chip-level security bug.

Programmers are scrambling to overhaul the open-source Linux kernel's virtual memory system. Meanwhile, Microsoft is expected to publicly introduce the necessary changes to its Windows operating system in an upcoming Patch Tuesday: these changes were seeded to beta testers running fast-ring Windows Insider builds in November and December.

Crucially, these updates to both Linux and Windows will incur a performance hit on Intel products. The effects are still being benchmarked, however we're looking at a ballpark figure of five to 30 per cent slow down, depending on the task and the processor model. More recent Intel chips have features – such as PCID – to reduce the performance hit. Your mileage may vary.

***

**Impact**

It is understood the bug is present in modern Intel processors produced in the past decade. It allows normal user programs – from database applications to JavaScript in web browsers – to discern to some extent the layout or contents of protected kernel memory areas.

***

These KPTI patches move the kernel into a completely separate address space, so it's not just invisible to a running process, it's not even there at all. Really, this shouldn't be needed, but clearly there is a flaw in Intel's silicon that allows kernel access protections to be bypassed in some way.

The downside to this separation is that it is relatively expensive, time wise, to keep switching between two separate address spaces for every system call and for every interrupt from the hardware. These context switches do not happen instantly, and they force the processor to dump cached data and reload information from memory. This increases the kernel's overhead, and slows down the computer.

Your Intel-powered machine will run slower as a result.

31.     On January 3, 2018, *Reuters* published an article entitled "Security flaws put virtually all phones, computers at risk," stating that Intel's CEO, Defendant Krzanich, said "Google researchers told Intel of the flaws 'a while ago,'" stating in pertinent part:

> **Security flaws put virtually all phones, computers at risk**
>
> FRANKFURT/SAN FRANCISCO (Reuters) - Security researchers on Wednesday disclosed a set of security flaws that they said could let hackers steal sensitive information from nearly every modern computing device containing chips from Intel Corp, Advanced Micro Devices Inc and ARM Holdings.
>
> One of the bugs is specific to Intel but another affects laptops, desktop computers, smartphones, tablets and internet servers alike. Intel and ARM insisted that the issue was not a design flaw, but it will require users to download a patch and update their operating system to fix.
>
> "Phones, PCs, everything are going to have some impact, but it'll vary from product to product," Intel CEO Brian Krzanich said in an interview with CNBC Wednesday afternoon.
>
> Researchers with Alphabet Inc's Google Project Zero, in conjunction with academic and industry researchers from several countries, discovered two flaws.
>
> The first, called Meltdown, affects Intel chips and lets hackers bypass the hardware barrier between applications run by users and the computer's memory, potentially letting hackers read a computer's memory and steal passwords. The second, called Spectre, affects chips from Intel, AMD and ARM and lets hackers potentially trick otherwise error-free applications into giving up secret information.
>
> ***
>
> ***Speaking on CNBC, Intel's Krzanich said Google researchers told Intel of the flaws "a while ago" and that Intel had been testing fixes that device makers who use its chips will push out next week. Before the problems became public, Google on its blog said Intel and others planned to disclose the issues on Jan. 9. Google said it informed the affected companies about the "Spectre" flaw on June 1, 2017 and reported the "Meltdown" flaw after the first flaw but before July 28, 2017.***
>
> The flaws were first reported by tech publication The Register. It also reported that the updates to fix the problems could causes Intel chips to operate 5 percent to 30 percent more slowly.

(Emphasis added.)

32. Media outlets also reported that Google Project Zero's security team had discovered serious security flaws affecting computer processors built by Intel, AMD and other chipmakers. In a blog post, the Project Zero team stated that security flaws—dubbed "Meltdown" and "Spectre"—allows third parties to gather passwords and other sensitive data from a system's memory, stating in relevant part:

9

> We have discovered that CPU data cache timing can be abused to efficiently leak information out of mis-speculated execution, leading to (at worst) arbitrary virtual memory read vulnerabilities across local security boundaries in various contexts.
>
> Variants of this issue are known to affect many modern processors, including certain processors by Intel, AMD and ARM. For a few Intel and AMD CPU models, we have exploits that work against real software. We reported this issue to Intel, AMD and ARM on 2017-06-01.

33. On that same day, Intel published an article on its website entitled "Intel Responds to Security Research Findings," confirming that its chips contain a feature that makes them vulnerable to hacking, stating in pertinent part:

**Intel Responds to Security Research Findings**

> Intel and other technology companies have been made aware of new security research describing software analysis methods that, when used for malicious purposes, have the potential to improperly gather sensitive data from computing devices that are operating as designed.

34. Following these disclosures, Intel's share price fell $1.59, or over 3.5%, to close at $45.26 per share on January 3, 2018, damaging investors.

35. On January 4, 2018, several news outlets reported that Intel's CEO, Defendant Krzanich, sold off $24 million worth of Intel stock and options in late November, after Intel was informed of vulnerabilities in its semiconductors, but before it was publicly disclosed. Defendant Krzanich sold roughly half his stock and options months after he learned about critical flaws in billions of Intel's microchips, but before it was publicly disclosed, and now holds only the minimum number of shares he is required to own.

36. Following this news, Intel's share price fell $0.83, or 1.83%, to close at $44.43 per share on January 4, 2018, damaging investors.

37. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

38. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Intel common shares traded on the NASDAQ during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

39. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Intel common shares were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Intel or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

40. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

41. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

42. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of Intel;

- whether Defendants caused Intel to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Intel securities during the Class Period were artificially inflated because of Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

43. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

44. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Intel common shares are traded in efficient markets;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's common shares; and

- Plaintiff and members of the Class purchased and/or sold Intel common shares between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

45. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

46. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

47. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

48. This Count is asserted against Intel and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

49. During the Class Period, Intel and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

50. Intel and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;
- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Intel common shares during the Class Period.

51. Intel and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Intel were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These Defendants by virtue of their receipt of information reflecting the true facts of Intel, their control over, and/or receipt and/or modification of Intel allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Intel, participated in the fraudulent scheme alleged herein.

52. Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Intel personnel to members of the investing public, including Plaintiff and the Class.

53. As a result of the foregoing, the market price of Intel common shares was artificially inflated during the Class Period. In ignorance of the falsity of Intel's and the Individual Defendants'

statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Intel common shares during the Class Period in purchasing Intel common shares at prices that were artificially inflated as a result of Intel's and the Individual Defendants' false and misleading statements.

54. Had Plaintiff and the other members of the Class been aware that the market price of Intel common shares had been artificially and falsely inflated by Intel's and the Individual Defendants' misleading statements and by the material adverse information which Intel's and the Individual Defendants did not disclose, they would not have purchased Intel's common shares at the artificially inflated prices that they did, or at all.

55. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

56. By reason of the foregoing, Intel and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of Intel common shares during the Class Period.

**COUNT II**

**Violation of Section 20(a) of The Exchange Act Against The Individual Defendants**

57. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

58. During the Class Period, the Individual Defendants participated in the operation and management of Intel, and conducted and participated, directly and indirectly, in the conduct of Intel's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's inadequate internal safeguards in data security protocols.

59. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Intel's financial condition and results of operations, and to correct promptly any public statements issued by Intel which had become materially false or misleading.

60. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Intel disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Intel to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Intel within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Intel common shares.

61. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Intel.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post- judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

Case 4:18-cv-00507-YGR   Document 1   Filed 01/23/18   Page 17 of 20

# DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: January 23, 2018

    Respectfully submitted,

**POMERANTZ LLP**

By: */s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
468 North Camden Drive
Beverly Hills, CA 90210
Telephone: (818) 532-6499
E-mail: jpafiti@pomlaw.com

**POMERANTZ, LLP**
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
E-mail: jalieberman@pomlaw.com
E-mail: ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
E-mail: pdahlstrom@pomlaw.com

**BRONSTEIN, GEWIRTZ
& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
(212) 697-6484
peretz@bgandg.com

*Attorneys for Plaintiff*

**Submission Date**

2018-01-21 18:26:27

# CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

1.   I  make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.   I have reviewed a Complaint against against Intel Corporation ("Intel" or the "Company"), as well as media and analyst reports about the Company. Plaintiff believes and authorizes the filing of a comparable complaint on my behalf.

3.   I did not purchase or acquire Intel securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.   I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Intel securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.   To the best of my current knowledge, the attached sheet lists all of my transactions in Intel securities during the Class Period as specified in the Complaint.

6.   During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.   I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.   I declare under penalty of perjury that the foregoing is true and correct.

## Name

**Print Name**

Meerain Ali

## Acquisitions

**Configurable list (if none enter none)**

| Date Acquired | Number of Shares Acquired | Price per Share Acquired |
|---|---|---|
| 03/01/2018 | 250 | $ 45.87 |
| 03/01/2018 | 100 | $ 44.99 |

## Sales

**Configurable list (if none enter none)**

| Date Sold | Number of Shares Sold | Price per Share Sold |
|---|---|---|
| 03/01/2018 | 100 | $ 45.24 |
| 05/01/2018 | 100 | $ 45.10 |
| 05/01/2018 | 50 | $ 44.75 |
| 05/01/2018 | 100 | $ 44.755 |

# Documents & Message

**Upload your brokerage statements showing your individual purchase and sale orders.**


(redacted)

**Signature**



**Full Name**

Meerain Ali


(redacted)

**INTEL CORPORATION (INTC)**                                    **Ali, Meerain**

## LIST OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHARES/UNITS | PRICE PER SHARES/UNITS |
|---|---|---|---|
| 1/3/2018 | Purchase | 250 | $45.8700 |
| 1/3/2018 | Purchase | 100 | $44.9900 |
| 1/3/2018 | Sale | 100 | $45.2400 |